# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CADILLAC UNIFORM & LINEN SUPPLY, INC., <br><br> Plaintiff, <br><br> v. <br><br> CENTRAL GENERAL DE TRABAJADORES, <br><br> Defendant. | CIVIL NO.: 19-2060 (ADC) |

## REPORT AND RECOMMENDATION

**I.   Procedural and Factual Background[1]**

Pending before the court is Cadillac Uniform & Linen Supply, Inc.'s ("Plaintiff") request for preliminary and permanent injunction, and for declaratory relief. ECF No. 2. This report and recommendation considers whether the Court has subject matter jurisdiction. See ECF No. 18.

Plaintiff is a Puerto Rico corporation that leases and launders a variety of products including uniforms, linens, and mats for customers such as hospitality providers, medical providers, and manufacturers. Plaintiff alleges that on March 15, 2019, Central General de Trabajadores ("Defendant") was certified by the National Labor Relations Board as the new representative of a bargaining unit of Plaintiff's employees previously represented by Teamsters Local 901 ("Teamsters"). It is alleged that Defendant attempted to substitute itself for the Teamsters as the Union Representative in arbitrations previously filed by the Teamsters under the terms of the expired and terminated collective bargaining agreement ("CBA") between Plaintiff and the Teamsters.

---

[1] The following sequence of events is based on the factual allegations in the complaint (ECF No. 1), Plaintiff's memorandum of law regarding subject matter jurisdiction (ECF No. 27), and the procedural posture consonant with the filings in cases 19-1744 (ADC) and 19-2060 (ADC). Defendant is in default. ECF No. 16.

On August 2, 2019, Plaintiff filed a complaint seeking a temporary restraining order, permanent injunctive relief, and declaratory judgment against Defendant. See Civil Case No. 19-1744 (ADC), ECF No. 1. On August 5, 2019, the Court issued the temporary restraining order enjoining Defendant from requesting or compelling Plaintiff to attend an arbitration hearing scheduled for August 7, 2019. Id., ECF No. 9. During the last weeks of August 2019, Defendant began a labor strike. Soon thereafter, Plaintiff and Defendant began negotiations to resolve their dispute. On September 23, 2019, Plaintiff and Defendant executed a settlement agreement. As a result of that agreement, Plaintiff moved to voluntarily dismiss without prejudice its cause of action against Defendant. On October 8, 2019, the Court dismissed Plaintiff's complaint without prejudice. Id., ECF No. 27.

On November 11, 2019, Plaintiff filed the instant complaint for declaratory and injunctive relief against Defendant. ECF No. 1. Plaintiff claims that Defendant breached the terms of the settlement agreement and is currently seeking to arbitrate grievances that arose under the terms of the expired CBA between Plaintiff and the Teamsters. Defendant failed to appear, and the Court entered default against it. ECF Nos. 15, 16.

The issue at hand is articulated in the referral order: "As a threshold matter, the United States Magistrate shall make a recommendation as to whether the Court has subject matter jurisdiction in light of the fact that plaintiff did not submit to the Court the settlement agreement reached in Civil No. 19-1744 (ADC) and/or if any alternative source of jurisdiction attaches." ECF No. 18, at 5.

**II.     Legal Analysis**

"Federal courts, as courts of limited jurisdiction, may not presume the existence of subject matter jurisdiction, but, rather, must appraise their own authority to hear and determine

particular cases." Calderon-Serra v. Wilmington Trust Co., 715 F.3d 14, 17 (1st Cir. 2013) (quoting Cusumano v. Microsoft Corp., 162 F.3d 708, 712 (1st Cir. 1998)). "The party invoking the jurisdiction of a federal court carries the burden of proving its existence." Id. (quoting Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995)). Federal question jurisdiction is present in "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In determining whether it is vested with federal subject matter jurisdiction, the court is permitted to look beyond the pleadings to outside materials. See González v. United States, 284 F.3d 281, 288 (1st Cir. 2002).

In the case at hand, Plaintiff admits that the settlement agreement was not made part of the order of dismissal in Civil No. 19-1744. See ECF No. 27, at 5. It is contended by Plaintiff, however, that Section 301 of the Labor Management Relations Act ("LMRA") provides an independent basis for subject matter jurisdiction. Id. Section 301(a) of the LMRA states:

> suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). Therefore, a Section 301 claim has three requirements: "(1) a claim of violation of (2) a contract (3) between an employer and a labor organization [representing employees in an industry affecting commerce.]" Pari Mutuel Clerks Union of Louisiana, Local 328 v. Fair Grounds Corp., 703 F.2d 913, 918 n.4 (5th Cir. 1983).

Plaintiff claims that the court has subject matter jurisdiction under Section 301 because its claims arise out of Defendant's violation of the settlement agreement which constitutes a contract under Section 301. ECF No. 1, at 4; ECF No. 27, at 6-7. In Retail Clerks Int'l Ass'n v. Lion Dry Goods, Inc., the Supreme Court rejected the notion that Section 301 limits federal

3

jurisdiction to collective bargaining contracts and held that it is broad enough to include a strike settlement agreement. 369 U.S. 17, 28 (1962). The Supreme Court explained

> [i]t is enough that this is clearly an agreement between employers and labor organizations significant to the maintenance of labor peace between them. It came into being as a means satisfactory to both sides for terminating a protracted strike and labor dispute. Its terms affect the working conditions of the employees of both respondents. It effected the end of picketing and resort by the labor organizations to other economic weapons, and restored strikers to their jobs. It resolved a controversy arising out of, and importantly and directly affecting, the employment relationship. Plainly it falls within § 301(a).

Id. Courts have consistently held that the term "contracts" within Section 301 encompasses more than just collective bargaining agreements. See Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp., 10 F.3d 1563, 1565 n.2 (11th Cir. 1994) ("There is § 301 jurisdiction because the case concerns a contract—a settlement agreement between an employer and a union"); Smith v. Kerrville Bus Co., 709 F.2d 914, 920 (5th Cir. 1983) (Section 301 "must be broadly construed to encompass any agreement, written or unwritten, formal or informal, which functions to preserve harmonious relations between labor and management."); Asyali v. Sheraton Palace Hotel, Civ. No. 92-2924, 1993 WL 137303, at *4 (N.D. Cal. Apr. 22, 1993) (holding that a memorandum of understanding between a hotel and labor union concerning the closure and anticipated reopening of the hotel is a contract within the meaning of Section 301). Therefore, the settlement agreement between Plaintiff and Defendant is a contract under Section 301 because it put an end to a strike and it is significant to the maintenance of labor peace between them. See Retail Clerks, 369 U.S. at 28.

Lastly, the third requirement of Section 301 is satisfied because Defendant is a labor organization representing employees in an industry affecting commerce. According to the LMRA, "industry affecting commerce" means "any industry or activity in commerce or in which a labor dispute would burden or obstruct commerce or tend to burden or obstruct commerce or

4

the free flow of commerce." 29 U.S.C. § 142(1). The laundry service industry has been found to be an industry affecting commerce under the LMRA. See Parker v. Laundry, Dry Cleaning & Dye House Workers Union Local 218, Civ. No. 17-394, 1974 WL 1298, at *5 (N.D. Ala. May 30, 1974) (finding that the business of laundry and dry cleaning is an industry affecting interstate commerce); Iron City Indus. Cleaning Corp. v. Local 141, Laundry and Dry Cleaners Int'l Union, AFL-CIO, Civ. No. 70-1040, 1970 WL 686, at *1 (W.D. Pa. Sept. 22, 1970) (finding that an industrial laundry is engaged in an industry affecting commerce). In the case at hand, Plaintiff provides laundry services for hospitality providers, medical providers, and manufacturers. Thus, Defendant is a labor organization representing employees in an industry affecting commerce because it represents Plaintiff's employees.

The settlement agreement between Plaintiff and Defendant is a contract between an employer and a labor organization representing employees in an industry affecting commerce. Therefore, Section 301 of the LMRA confers subject matter jurisdiction over Plaintiff's claims arising from Defendant's violation of the settlement agreement.

### III. Conclusion

For the foregoing reasons, it is hereby recommended a finding that the Court has subject matter jurisdiction over this matter pursuant to Section 301(a) of the LMRA. The parties have fourteen (14) days to file any objections to this report and recommendation unless otherwise ordered by the court. Failure to file the same within the specified time waives the right to object to this report and recommendation. Fed. R. Civ. P. 72(b)(2); Fed. R. Civ. P. 6(c)(1)(B); D.P.R. Civ. R. 72(d); see also 28 U.S.C. § 636(b)(1); Henley Drilling Co. v. McGee, 36 F.3d 143, 150–51 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4 (1st Cir. 1986).

IT IS SO RECOMMENDED.

In San Juan, Puerto Rico, this 22nd day of June, 2020.

s/Marcos E. López  
U.S. Magistrate Judge