IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CADILLAC UNIFORM & LINEN SUPPLY, INC., <br><br> Plaintiff, <br><br> v. <br><br> CENTRAL GENERAL DE TRABAJADORES, <br><br> Defendant. | CIVIL NO.: 19-2060 (ADC) |

**REPORT AND RECOMMENDATION**

**I.    Procedural Background**

Pending before the court is Cadillac Uniform & Linen Supply, Inc.'s ("Plaintiff" or "Company") request for preliminary and permanent injunction, and for declaratory relief. ECF Nos. 1, 2. On November 11, 2019, Plaintiff filed a complaint against Central General de Trabajadores ("Defendant" or "CGT"). ECF No. 1. Defendant failed to appear, and the court entered default against it. ECF Nos. 15, 16. On June 25, 2020, a hearing was held regarding Plaintiff's request for injunctive relief. ECF No. 31.

**II.    Factual Background**

The following factual background is taken from the evidence presented at the preliminary injunction hearing and the verified complaint (ECF No. 1) which Ms. Melissa Santiago Nieves ("Ms. Santiago"), Human Resources Manager for Plaintiff, incorporated into her testimony at the hearing. Plaintiff is an industrial laundry service that leases and launders a variety of textile materials for its customers in the hospitality, medical, and manufacturing industries. Plaintiff is an independent Puerto Rico corporation and has approximately 200 employees.

Teamsters Local 901 ("the Teamsters") is a labor union that began representing certain classifications of Plaintiff's employees in 2012. The collective bargaining agreement between Plaintiff and the Teamsters ("Teamsters CBA") included grievance and arbitration procedures for employee complaints.[1] ECF No. 1, at 2-3. Ms. Santiago testified that employee complaints could be resolved through two processes. First, minor claims and those that involved no financial risk were handled internally between Plaintiff, the employee, and the Teamsters as the employee's union representative. Second, regular claims involving greater financial risk and minor claims that were not resolved internally were submitted for arbitration before the Bureau of Conciliation and Arbitration in the Puerto Rico Department of Labor and Human Resources ("the Bureau"). These arbitrations were between Plaintiff, the employee, and the Teamsters.

On March 6, 2019, an election was conducted before the National Labor Relations Board ("NLRB") to determine the new collective bargaining representative of Plaintiff's employees. On March 15, 2019, Defendant was certified by the NLRB as the exclusive bargaining representative of Plaintiff's employees. See ECF No. 32-1. The Teamsters CBA expired after Defendant became the new certified union representative.

Subsequently, Defendant attempted to substitute itself for the Teamsters as the union representative in arbitrations that had been previously filed by the Teamsters pursuant to the expired Teamsters CBA. Ms. Santiago testified that Plaintiff opposed Defendant's participation in these arbitrations. Defendant was not a party to the expired Teamsters CBA and Plaintiff did not consent to Defendant's appearance as union representative in these cases. Plaintiff's concerns regarding these arbitrations were discussed at a meeting between Plaintiff, Defendant, and the Director of the Bureau. On July 2, 2019, the Bureau informed Plaintiff that Defendant would

---

[1] The Teamsters CBA was not submitted to the court in either the verified complaint or as an exhibit at the preliminary injunction hearing.

2

serve as the union representative in those cases that were previously filed by the Teamsters as the Teamster's successor in interest. See ECF No. 32-2.

On August 2, 2019, Plaintiff filed a complaint in the United States District Court for the District of Puerto Rico seeking a temporary restraining order, permanent injunctive relief, and declaratory judgment against Defendant. See Civil Case No. 19-1744 (ADC). Plaintiff sought to enjoin Defendant from participating in the grievances of those complaints previously filed by the Teamsters that arose under the terms of the expired Teamsters CBA. On August 5, 2019, the court issued a temporary restraining order enjoining Defendant from requesting or compelling Plaintiff to attend an arbitration hearing scheduled for August 7, 2019. Id., ECF No. 9. Defendant commenced a labor strike in early August 2019. Subsequently, Plaintiff and Defendant began negotiations to resolve their dispute and they agreed to a CBA in September 2019 ("2019 CBA").[2]

On September 23, 2019, Plaintiff and Defendant signed an agreement entitled "Stipulation" which Ms. Santiago clarified at the hearing is distinct from the 2019 CBA. See ECF No. 32-3. Pursuant to the Stipulation, Plaintiff agreed to not object to Defendant appearing before the Bureau as the union representative in cases pending arbitration filed by the Teamsters where "the complainants are active employees of [Plaintiff], and members of the contracting unit." Id. at 2. It was also agreed in the Stipulation that Defendant would withdraw, with prejudice, various cases that it had filed with the NLRB prior to signing the 2019 CBA. As a result, Plaintiff moved to voluntarily dismiss without prejudice its case against Defendant. See Civil Case No. 19-1744 (ADC). On October 8, 2019, the court dismissed Plaintiff's complaint without prejudice. Id., ECF No. 27.

---

[2] The 2019 CBA was not submitted to the court in either the verified complaint or as an exhibit at the preliminary injunction hearing.

At the hearing, Ms. Santiago testified that Defendant did not comply with the terms of the Stipulation because it failed to withdraw certain cases it had filed against Plaintiff with the NLRB.[3] Hence, Plaintiff voided the Stipulation. However, Ms. Santiago testified that Defendant is still seeking to arbitrate those cases that were previously filed by the Teamsters under the expired Teamsters CBA. As a result, Plaintiff filed the instant complaint on November 11, 2019 seeking injunctive and declaratory relief. See ECF No. 1.

Ms. Santiago testified that Plaintiff does not consent to Defendant's appearances at these arbitrations, but yet, Defendant continues to appear as the union representative. For example, on March 3, 2020, Plaintiff received a notice from the Bureau informing Defendant and Plaintiff to select an arbitrator for an impending arbitration in Case No. A-15-2740. See ECF No. 32-4. Defendant is the union representative in the case. Id. Ms. Santiago testified that Case No. A-15-2740 was filed by the Teamsters in 2015 pursuant to the now expired Teamsters CBA. On March 12, 2020, Plaintiff received notice from the Bureau regarding the date and place of arbitrations to be held in three cases that were also filed by the Teamsters under the expired Teamsters CBA (Case Nos. A-16-1850, A-14-633, A-15-3063). See ECF No. 32-5. Defendant is the union representative in these three cases too. Id.

At the hearing, Ms. Santiago clarified that some, but not all, of the four cases referenced above had been contemplated by the Stipulation in which Plaintiff assented to Defendant's role as the union representative in arbitration requests filed by the Teamsters. According to Ms. Santiago, Plaintiff would incur significant financial liability and risk if it was compelled to arbitrate cases with Defendant that had been previously filed by the Teamsters. Ms. Santiago

---

[3] Paragraph Eight of the Stipulation reads as follows: "[p]rior to the signing of the collective bargaining agreement in September 2019, both the [Plaintiff] and [Defendant] filed separate charges with the National Labor Relations Board. The parties agree that [Plaintiff], [Defendant], and its members shall withdraw with prejudice all charges filed with the NLRB prior to the signature date of the collective agreement." ECF No. 32-3.

4

testified at the hearing that there are hundreds of cases pending arbitration before the Bureau that were filed by the Teamsters. The value of those cases exceeds $500,000.

### III.     Legal Analysis

Plaintiff requests that a preliminary and permanent injunction be issued, and that a declaratory judgment be awarded in its favor, enjoining Defendant from arbitrating any unresolved grievances or arbitrations filed by the Teamsters. ECF No. 1, at 6. The court will analyze each of these requests in turn.

#### A. Preliminary Injunction

In considering a motion for preliminary injunction, a court weighs several factors: "(1) the plaintiff's likelihood of success on the merits; (2) the potential for irreparable harm in the absence of an injunction; (3) whether issuing an injunction will burden the defendants less than denying an injunction would burden the plaintiffs; and (4) the effect, if any, on the public interest." United States v. Weikert, 504 F.3d 1, 5 (1st Cir. 2007) (citing Bl(a)ck Tea Soc'y v. City of Boston, 378 F.3d 8, 11 (1st Cir. 2004)). The first two factors, likelihood of success on the merits and potential for irreparable harm, are the "most important in the calculus." Bruns v. Mayhew, 750 F.3d 61, 65 (1st Cir. 2014) (quoting González-Droz v. González-Colón, 573 F.3d 75, 79 (1st Cir. 2009)). "[T]he measure of irreparable harm is not a rigid one; it has been referred to as a sliding scale, working in conjunction with a moving party's likelihood of success on the merits." Vaqueria Tres Monjitas, Inc. v. Irizarry, 587 F.3d 464, 485 (1st Cir. 2009); see E.E.O.C. v. Astra U.S.A., Inc., 94 F.3d 738, 743 (1st Cir. 1996) ("when the likelihood of success on the merits is great, a movant can show somewhat less in the way of irreparable harm and still garner preliminary injunctive relief.").

Before embarking on the traditional preliminary injunction analysis, it is noted that Defendant is in default. See ECF No. 16. "After an entry of default, a court may examine a plaintiff's complaint to determine whether it alleges a cause of action. In making that determination it must assume that all well pleaded factual allegations are true." Quirindongo Pacheco v. Rolon Morales, 953 F.2d 15, 16 (1st Cir. 1992) (citations omitted); see also Franco v. Selective Ins. Co., 184 F.3d 4, 9 n.3 (1st Cir. 1999) ("A party who defaults is taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability[.]").

The verified complaint avers that the expired Teamsters CBA included grievance and arbitration procedures under which the Teamsters could pursue employee complaints to binding arbitration. ECF No. 1, at 2-3, ¶ 7. The verified complaint also asserts that Defendant was not a party to the expired Teamsters CBA. Id., at 3, ¶ 8. These factual allegations are taken as true because Defendant is in default. See ECF No. 16; Quirindongo, 953 F.2d at 16. Thus, Plaintiff is likely to succeed on the merits because it has no contractual duty to arbitrate cases filed by the Teamsters with Defendant.

"No obligation to arbitrate a labor dispute arises solely by operation of law. The law compels a party to submit his grievance to arbitration only if he has contracted to do so." Gateway Coal Co. v. Mine Workers, 414 U.S. 368, 374 (1974). Therefore, because arbitration is a matter of contract, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" McCarthy v. Azure, 22 F.3d 351, 354 (1st Cir. 1994) (quoting AT&T Tech., Inc. v. Commc'n Workers of America, 475 U.S. 643, 648-49 (1986)). In the case at hand, Defendant was not a signatory to the expired Teamsters CBA. ECF No. 1, at 3, ¶ 8. Thus,

Defendant derives no authority from it to arbitrate cases filed by the Teamsters. See McCarthy, 22 F.3d at 354.

Furthermore at the present, Defendant does not have any rights under the Stipulation to arbitrate cases brought by the Teamsters. In September 2019, Plaintiff and Defendant agreed to a Stipulation where Plaintiff would not object to Defendant's appearance as the union representative in certain cases filed by the Teamsters. ECF No. 32-3, at 2, ¶ 6. Ms. Santiago testified, however, that Defendant did not comply with the terms of the Stipulation requiring it to withdraw certain cases before the NLRB. Consequently, Plaintiff voided the Stipulation. The Supreme Court of Puerto Rico has held that pursuant to Article 1077

> when one of the parties to the agreement does not comply with his obligation, the Civil Code grants the aggrieved party the right to choose between fulfillment of the obligation or rescission of the same, and to seek damages and interest in both cases. This right to rescind the obligations is implied in cases of mutual agreements.

Ramírez v. Club Cala de Palmas, 123 D.P.R. 339, 347–48 (P.R. 1989) (citing 31 L.P.R.A. § 3052). However, "[n]ot every breach of a contractual obligation gives rise to the right to rescind the contract [pursuant to Article 1077]." Rojas-Buscaglia v. Taburno-Vasarhelyi, 113 F. Supp. 3d 534, 544 (D.P.R. 2015) (citing Dopp v. HTP Corp., 947 F.2d 506, 510 (1st Cir. 1991)). "For this to be the case, the unmet obligation must be an essential obligation or fulfillment of the obligation must constitute the motive that induced the other party to enter into the contract." Ramírez, 123 D.P.R. at 347-48; see Rojas-Buscaglia, 113 F. Supp. 3d at 544 (citing Dopp v. Pritzker, 38 F.3d 1239, 1243-44 (1st Cir. 1994)).

Pursuant to the Stipulation, Plaintiff agreed that it would not object to Defendant's appearance as union representative in certain cases before the Bureau filed by the Teamsters under the expired Teamsters CBA. See ECF No. 32-3, at 2, ¶ 7. In exchange, Defendant agreed to withdraw, with prejudice, various cases that it had filed with the NLRB prior to the signing of

7

the 2019 CBA. Id. at ¶ 8. Therefore, Defendant's failure to withdraw cases it had filed with the NLRB constitutes the breach of an essential obligation of the Stipulation. Accordingly, Plaintiff properly rescinded the Stipulation under Article 1077. See 31 L.P.R.A. § 3052. The effect of Plaintiff's decision to rescind the Stipulation is that Defendant no longer has Plaintiff's consent to appear as union representative in cases filed by the Teamsters regardless of whether the complainants are active employees of the Company and members of the contracting unit. Thus, because no contract exists between Plaintiff and Defendant providing for Defendant's appearance at arbitrations filed by the Teamsters, Defendant has no contractual basis to arbitrate any unresolved complaints filed by the Teamsters. See McCarthy, 22 F.3d at 354.

Furthermore, decisions from the NLRB have held that when a union is decertified, or otherwise removed as a bargaining unit representative, the new union may not step into the shoes of the decertified union and seek to arbitrate grievances the prior union had with the employer. See Children's Hosp. and Research Ctr. of Oakland, 364 NLRB No. 114, 2016 WL 4611341, at *9 (2016), ("it is clear that a replacement union may not seek to arbitrate grievances that arose under the contract between its predecessor union and the employer."); Arizona Portland Cement Co., 302 NLRB 36, 1991 WL 40857, at *37 (1991) ("We conclude that there is no sound basis for requiring the Respondent to arbitrate even the grievances it had earlier agreed to arbitrate because we do not find clear consent to arbitrate those grievances with a different bargaining representative."). Here, although Defendant was certified as the new collective bargaining representative of certain classifications of Plaintiff's employees on March 15, 2019, it may not

arbitrate cases brought by the Teamsters simply because it is the replacement union. See id. Thus, Plaintiff has shown a likelihood of success on the merits.[4]

The second prong of the traditional preliminary injunction test, risk of irreparable harm, favors Plaintiff. In its request for injunctive relief, Plaintiff argues that it would suffer irreparable harm if it was compelled to arbitrate claims with Defendant for which it has no CBA to arbitrate, "and it will be forced to incur significant time and expense and be potentially faced with arbitration rulings directing it to take actions it should not have to take." ECF No. 2, at 7. Courts have held that irreparable harm is present where a party is forced to arbitrate a dispute that it did not intend to be subject to arbitration. See Maryland Cas. Co. v. Realty Advisory Bd. on Labor Relations, 107 F.3d 979, 985 (2d Cir. 1997) ("Maryland would be irreparably harmed by being forced to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable."); McLaughlin Gormley King Co. v. Terminix Int'l Co., 105 F.3d 1192, 1194 (8th Cir. 1997) ("prior cases uniformly hold that the party urging arbitration may be enjoined from pursuing what would now be a futile arbitration, even if the threatened irreparable injury to the other party is only the cost of defending the arbitration and having the court set aside any unfavorable award.").

Plaintiff has not consented to arbitrate cases filed by the Teamsters with Defendant. It would suffer irreparable harm if it was forced to do so, especially given the numerosity and estimated value of the cases. See id. Ms. Santiago testified that there are over one hundred cases pending arbitration before the Bureau that were filed by the Teamsters and the value of those cases exceeds $500,000. There is no other method by which Plaintiff can protect itself against

---

[4] The Bureau's contention in its July 2, 2019 letter that Defendant may appear as the union representative in arbitrations filed by the Teamsters as the successor in the interest because it is the new union representative of Plaintiff's employees is unfounded as it is contrary to NLRB precedent. ECF No. 32-2, at 1-2.

9

the risk, and great expense, of arbitrating over a hundred cases where the arbitration rulings will ultimately not be enforceable. Further, Plaintiff could be forced to appeal these rulings and arbitrate the cases a second time or be subject to an arbitration ruling ordering it to take measures that go beyond the economic realm such as reinstating an employee. Thus, Plaintiff would suffer irreparable harm in the absence of the preliminary injunction.

Next, the third factor of the traditional preliminary injunction test, balance of the hardships, also favors Plaintiff. The court is required to assess the interests of the parties and balance the "the hardship that will befall the nonmovant if the injunction issues contrasted with the hardship that will befall the movant if the injunction does not issue." Mercado-Salinas v. Bart Enters. Int'l., 671 F.3d 12, 19 (1st Cir. 2011). In the case at hand, Defendant would suffer minimal hardship if the injunction issued because it was never a party to the expired Teamsters CBA and at the present lacks the right to arbitrate these cases. If the injunction was not issued, however, Plaintiff would be forced to incur considerable time and expense in arbitrating cases where the law does not compel it to do so. Furthermore, without the injunction, Plaintiff could be subject to adverse arbitration rulings directing it to take actions it should not be required to complete. The balance of equities weighs in favor of Plaintiff.

Lastly, the court considers the impact of granting or denying an injunction on the public interest. The public has a strong interest in the issuance of the injunction because the injunction would prevent scarce administrative forum resources from being expended on cases where the arbitration award would be negated on appeal. Furthermore, the public interest would not be served if Plaintiff was forced to arbitrate cases with a party that it does not consent to arbitrate with. See McCarthy, 22 F.3d at 354. Thus, the public interest would be furthered by the proposed preliminary injunction.

For these reasons, the public interest and other factors of the traditional preliminary injunction test weigh in favor of the issuance of the preliminary injunction. Accordingly, Plaintiff's request for preliminary injunctive relief should be GRANTED.

### B. Permanent Injunction

Plaintiff also requests permanent injunctive relief. ECF No. 2, at 10. The standard for permanent injunctive relief is the same as the preliminary injunction standard "except that the movant must show actual success on the merits of the claim, rather than a mere likelihood of success." Total Petroleum P.R. Corp. v. Colón, 819 F. Supp. 2d 55, 70 (D.P.R. 2011) (quoting Caroline T. v. Hudson Sch. Dist., 915 F.2d 752, 755 (1st Cir. 1990)). "Thus, [i]n order to issue a permanent injunction, a district court typically must find (1) that the plaintiff has demonstrated actual success on the merits of its claims; (2) that the plaintiff would be irreparably injured in the absence of injunctive relief; (3) that the harm to the plaintiff from defendant's conduct would exceed the harm to the defendant accruing from the issuance of an injunction; and (4) that the public interest would not be adversely affected by an injunction." Id. (quoting United States v. Mass. Water Res. Auth., 256 F.3d 36, 51 n.15 (1st Cir. 2001)).

In the case at bar, Plaintiff has demonstrated not only likely success but actual success on the merits because Defendant is in default. See Twist and Shout Music v. Longneck Xpress NP, 441 F. Supp. 2d. 782, 785 (E.D. Tex. 2006) ("Here, the entry of default against Defendant is tantamount to actual success on the merits"); Tracfone Wireless, Inc. v. Hernández, 196 F. Supp. 3d 1289, 1301 (S.D. Fla. 2016) ("the default against Defendant satisfies the element of success on the merits."). According to the verified complaint, the expired Teamsters CBA included arbitration procedures under which the Teamsters could exclusively pursue complaints to binding arbitration. ECF No. 1, at 2-3. It is also stated in the verified complaint that Defendant

11

was not a party to the expired Teamsters CBA. Id. at 3. Therefore, Defendant has no right under the expired Teamsters CBA to appear as the union representative in those cases filed by the Teamsters. Furthermore, although Plaintiff had previously agreed via the Stipulation not to object to Defendant's appearance as union representative in certain cases filed by the Teamsters, Plaintiff's consent was rescinded when the Stipulation was breached by Defendant. Consequently, Defendant no longer has any legal rights pursuant to the Stipulation to serve as the union representative in those cases.

Furthermore, Defendant derives no right to arbitrate cases brought by the Teamsters by virtue of its status as a replacement union. See Children's Hosp. and Research Ctr. of Oakland, 364 NLRB No. 114, 2016 WL 4611341, at *9 (2016); Arizona Portland Cement Co., 302 NLRB 36, 1991 WL 40857, at *37 (1991). The court's preliminary injunction analysis regarding the last three factors of irreparable harm, the balance of the equities, and the public interest are incorporated by reference in considering Plaintiff's request for permanent injunction. Accordingly, Plaintiff's request for permanent injunctive relief should be GRANTED.

**C. Declaratory Judgment**

Lastly, Plaintiff seeks declaratory relief that Defendant may not arbitrate, or request or compel Plaintiff to arbitrate, any unresolved complaints or arbitrations filed by the Teamsters. ECF No. 1, at 5; ECF No. 2, at 10. The Declaratory Judgment Act authorizes federal courts to declare the rights of interested parties in a case of actual controversy. See Almonte v. Administracion de Correcion, 15 F. Supp. 2d 180, 181 (D.P.R. 1998); 28 U.S.C. § 2201 ("In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.").

An actual controversy is "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Almonte, (quoting Diagnostic Unit Inmate Council v. Films Inc., 88 F.3d 651, 653 (8th Cir. 1996)). Even if there is an actual controversy, "the granting of declaratory relief is within the discretion of the district court." Richmond Steel, Inc. v. Legal and General Assur. Soc., Ltd., 799 F. Supp. 234, 237 (D.P.R. 1992); see also El Dia, Inc. v. Hernández Colón, 963 F.2d 488 (1st Cir. 1992) ("declaratory relief, both by its very nature and under the plain language of 28 U.S.C. § 2201, is discretionary.").

In determining whether to grant declaratory relief, a court should consider whether a declaratory judgment would "clarify the legal questions at issue and expedite resolution of the controversy." Richmond Steel, Inc., 799 F. Supp. at 237 (citing Metro. Property & Liability Ins. Co. v. Kirkwood, 729 F.2d 61, 62 (1st Cir. 1984)). "The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Id. (citations omitted). "The remedy of a declaratory judgment 'is intended to minimize the danger of avoidable loss and the unnecessary accrual of damages and to afford one threatened with liability an early adjudication without waiting until an adversary should see fit to begin an action after the damage has accrued.'" Norton Lilly Int'l, Inc. v. Puerto Rico Ports Auth., Civ. No. 18-1012, 2018 WL 5099758, at *3 (D.P.R. Oct. 17, 2018) (quoting Wright & Miller, 10B Fed. Prac. & Proc. Civ. § 2751 (4th ed. 2018)).

In the case at bar, Plaintiff's complaint pleads adequate facts establishing an immediate and real controversy within the court's jurisdiction. The issue is whether Defendant may appear

as the union representative in unresolved arbitrations previously filed by the Teamsters pursuant to the expired Teamsters CBA and compel Plaintiff to arbitrate these cases. E.g., ECF No. 32-4; ECF No. 32-5. A declaratory judgment on this issue would be useful in clarifying the legal relations at hand because this is the second time that Plaintiff is in federal court seeking injunctive and declaratory relief regarding Defendant's appearance as the union representative in cases filed by the Teamsters. See Civil Case No. 19-1744 (ADC). Furthermore, a declaratory judgment would make clear the obligations of the parties considering the Bureau's disregard of NLRB precedent regarding these unresolved arbitrations filed by the Teamsters. See, supra, n.4. A declaratory judgment would resolve the legal dispute between the parties and provide a final resolution to the controversy. Accordingly, the issuance of a declaratory judgment is recommended.

     As stated earlier, Defendant was not a party to the expired Teamsters CBA under which the Teamsters had the exclusive right to pursue employee complaints to binding arbitration. Because the cases at issue were filed by the Teamsters and arose under the expired Teamsters CBA, Defendant has no right to arbitrate these cases. Furthermore, while Plaintiff had previously permitted Defendant to arbitrate certain cases filed by the Teamsters under the Stipulation, that agreement was rescinded by Plaintiff when Defendant failed to withdraw certain complaints before the NLRB. Consequently, Defendant may not arbitrate these claims under the Stipulation. Arbitration is a matter of contract, and thus, the absence of any contractual basis permitting Defendant to arbitrate cases previously filed by the Teamsters dooms Defendant's appearance at these arbitrations. See McCarthy v. Azure, 22 F.3d 351, 354 (1st Cir. 1994). Lastly, the NLRB decisions are clear that Defendant, as the newly certified union, may not step into the Teamster's shoes to arbitrate claims filed by the Teamsters simply because it is the newly certified union.

See Children's Hosp. and Research Ctr. of Oakland, 364 NLRB No. 114, 2016 WL 4611341, at *9 (2016); Arizona Portland Cement Co., 302 NLRB 36, 1991 WL 40857, at *37 (1991).

Therefore, Plaintiff's request for declaratory judgment should be GRANTED. It is recommended that the court declare that Defendant is forbidden from participating in arbitrations of unresolved complaints filed by the Teamsters and does not have the right to request or compel Plaintiff to arbitrate cases filed by the Teamsters with CGT.

## IV.    Conclusion

For the foregoing reasons, it is hereby recommended that Plaintiff's request for preliminary injunction, permanent injunction, and declaratory judgment (ECF No. 2) be GRANTED. The parties have fourteen (14) days to file any objections to this report and recommendation unless otherwise ordered by the court. Failure to file the same within the specified time waives the right to object to this report and recommendation. Fed. R. Civ. P. 72(b)(2); Fed. R. Civ. P. 6(c)(1)(B); D.P.R. Civ. R. 72(d); see also 28 U.S.C. § 636(b)(1); Henley Drilling Co. v. McGee, 36 F.3d 143, 150–51 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4 (1st Cir. 1986).

IT IS SO RECOMMENDED.

In San Juan, Puerto Rico, this 7th day of July, 2020.

s/Marcos E. López<br>U.S. Magistrate Judge